01

02

03

04

05

06                              UNITED STATES DISTRICT COURT
                                WESTERN DISTRICT OF WASHINGTON
07                                        AT SEATTLE

08   TRISSA J. STRONG,                          )
                                                )   CASE NO. C11-5558-RSL
09                   Plaintiff,                 )
                                                )
10          v.                                  )
                                                )   REPORT AND RECOMMENDATION
11   MICHAEL J. ASTRUE, Commissioner of         )
     Social Security,                           )
12                                              )
                     Defendant.                 )
13   _____        )

14          Plaintiff Trissa J. Strong appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").   For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED for further proceedings.

20                          I.   FACTS AND PROCEDURAL HISTORY

21          Plaintiff was born in 1971 and has at least a high school education. (Administrative

22   Record ("AR") at 19, 40, 135.)   Her past work experience includes employment as an order

REPORT AND RECOMMENDATION
PAGE -1

01 clerk and a caretaker.   (AR at 47, 164-65.)   She was last gainfully employed in 2002.   (AR at

02 38, 136, 147, 338.)

03       In 2004, plaintiff filed applications for DIB and SSI which resulted in a final decision of

04 nondisability on August 21, 2007.   (AR at 12, 237, 100-09.)   On August 27, 2007, plaintiff

05 again filed applications for DIB and SSI, alleging disability beginning September 28, 2003.

06 (AR at 12, 135-45.)   She later amended her alleged disability onset date to August 22, 2007.[1]

07 (AR at 12, 237.)   Plaintiff asserts she is disabled due to depressive disorder with psychotic

08 features, anxiety disorder, post traumatic stress disorder ("PTSD"), adult attention deficit

09 hyperactivity disorder ("ADHD"), chronic back pain, and sleep apnea.   (AR at 237.)

10       The Commissioner denied plaintiff's claim initially and on reconsideration.   (AR at

11 56-62, 69-80.)   Plaintiff requested a hearing, which took place on December 11, 2009.   (AR at

12 25-49.)   On January 10, 2010, the ALJ issued a decision finding plaintiff not disabled.   (AR at

13 12-20.)   Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals

14 Council (AR at 1-4) making the ALJ's ruling the "final decision" of the Commissioner as that

15 term is defined by 42 U.S.C. § 405(g).   On July 21, 2011, plaintiff timely filed the present

16 action challenging the Commissioner's decision.   (Dkt. No. 3.)

## II.   JURISDICTION

18       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

19 405(g) and 1383(c)(3).

20 

---

21     1 The ALJ noted in her decision that "[t]he August 21, 2007, decision is the final

decision of the Commissioner and is entitled to res judicata effect for the period previously

22 adjudicated, through August 21, 2007.   Therefore, the decision will address the issue of

disability since August 22, 2007." (AR at 12.).

III.  DISCUSSION

02        The Commissioner follows a five-step sequential evaluation process for determining

03  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

04  must be determined whether the claimant has engaged in substantial gainful activity.   The ALJ

05  found plaintiff had not engaged in substantial gainful activity since the alleged onset date.

06  (AR at 14.)   At step two, it must be determined whether the claimant suffers from a severe

07  impairment.   The ALJ found plaintiff's obesity, affective disorder, anxiety disorder, alcohol

08  and drug abuse in reported remission, attention deficit disorder, and status post lumbar fusion

09  were severe impairments.  *Id*.   Step three asks whether the claimant's impairments meet or

10  equal the criteria of a listed impairment.   The ALJ found that plaintiff's impairments did not

11  meet or equal a listed impairment.   (AR at 15.)   If the claimant's impairments do not meet or

12  equal a listing, the Commissioner must assess residual functional capacity ("RFC") and

13  determine at step four whether the claimant has demonstrated an inability to perform past

14  relevant work.   The ALJ found plaintiff had the RFC to perform medium work, with

15  non-exertional limitations of performing simple, routine tasks with occasional contact with

16  coworkers and the public.   (AR at 15.)   With that assessment, the ALJ determined that

17  plaintiff could perform her past relevant work as an order clerk.   (AR at 18.)   If the claimant is

18  able to perform her past relevant work, she is not disabled; if the opposite is true, then the

19  burden shifts to the Commissioner at step five to show that the claimant can perform other work

20  that exists in significant numbers in the national economy, taking into consideration the

21  claimant's RFC, age, education, and work experience.   Alternatively, the ALJ determined

22  there were jobs that existed in significant numbers in the national economy that plaintiff could

01  perform, such as addresser, table worker, and dial marker.  (AR at 19.)  The ALJ concluded

02  plaintiff had not been under a disability from August 22, 2007, through the date of the decision.

03  (AR at 19.)

04       Plaintiff argues that the ALJ erroneously evaluated (1) the medical opinion evidence,

05  (2) the credibility assessment, (3) the lay witness statement, (4) the RFC finding, (5) the step

06  four finding, and (5) the step five finding.  (Dkt. No. 12.)  She requests remand for further

07  administrative proceedings.  *Id.* at 20.  The Commissioner argues that the ALJ's decision is

08  supported by substantial evidence, is free of legal error, and should be affirmed.   (Dkt. No. 15.)

09  For the reasons described below, the Court agrees with the plaintiff.

10       A.   Medical Opinion Evidence

11       In general, more weight should be given to the opinion of a treating physician than to a

12  non-treating physician, and more weight to the opinion of an examining physician than to a

13  non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   Where not

14  contradicted by another physician, a treating or examining physician's opinion may be rejected

15  only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

16  1396 (9th Cir. 1991)).   Where contradicted, a treating or examining physician's opinion may

17  not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

18  the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

19  1983)).

20       The ALJ may reject physicians' opinions "by setting out a detailed and thorough

21  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

22  making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).   Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather that the doctors', are correct."   *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Less weight may be assigned to the opinions of other sources.   *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).   However, "[s]ince there is a requirement to consider all relevant evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity."   Social Security Ruling ("SSR") 06-03p.   "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*.   "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)); *accord Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) ("'When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.'") (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

### 1.   Laura Jordhen, M.D.

Plaintiff argues that the ALJ erred by failing to properly evaluate the medical records of Laura Jordhen, M.D., her primary care physician at The Vancouver Clinic.   (Exs. 9F, 19F, 22F.)   She contends that "although the ALJ discusses some of the medical records from Dr. Jordhen, the ALJ does not mention her name, acknowledge that she had been treating Strong

01 since 2005, or acknowledge that she is prescribing many, many medications to Strong." (Dkt.

02 No. 12 at 4.) Plaintiff acknowledges that Dr. Jordhen did not express any opinion about her

03 functional abilities, but asserts this medical evidence is significant because it provides an

04 evidentiary basis for plaintiff's testimony regarding her symptoms and limitations.

05 The ALJ considered the medical evidence, including Dr. Jordhen's medical records, as

06 follows:

> She has a history of lumbar fusion in 1998 but was able to return to work following the surgery. The claimant was seen for back pain in September 2008. There was tenderness to palpitation over the lumbar region. She was able to flex to 90 degrees. It was suspected her pain was muscular. Physical therapy was recommended. (Exhibit 19F-60). After a few weeks of physical therapy she reported she was having no pain (Exhibit 19F-55). In December 2008 she reported low back pain after tumbling from a sled. It was recommended she restart physical therapy exercises. (Exhibit 19F-51-52). She continued to complain of pain. A urine drug screen in January 2009 was positive for morphine, which was not prescribed (Exhibit 19F-47). After initially expressing concern, her physician later agreed to prescribe MS Contin when the claimant reported her sister's morphine had taken away her pain (Exhibit 19F-42-44). She has continued to complain of pain, but reported improvement with water exercises in April 2009 (Exhibit 19F-28). In August 2009 she reported she was feeling better, going to the gym frequently, swimming and biking. She requested to taper off morphine. (Exhibit 19F-1).
>
> The claimant has been evaluated for complaints of hand numbness. EMG/nerve conduction studies in October 2007 were consistent with carpal tunnel syndrome (Exhibit 19F-78). There is no evidence of ongoing symptoms and she did not require treatment. Evidence does not support a finding of functional limitations related to carpal tunnel syndrome. The claimant was diagnosed with mild obstructive sleep apnea in March 2008 (Exhibit 9F-14-15). She was provided a CPAP machine (Exhibit 9F-9). Symptoms were well-controlled with CPAP (Exhibit 19F-64, 71). Evidence does not establish work-related functional limitations from well-controlled sleep apnea.
>
> In terms of the claimant's mental allegations, at a February 2008 psychological evaluation the claimant exhibited intact thought processes, normal speech, intact memory, and intact attention and concentration. Judgment appeared impaired and intellectual ability appeared low average. Symptoms appeared to primarily reflect

chronic low-grade depression. She was assigned a GAF 55-60. It was noted she was experiencing stressors associated with caring for her 4 month-old baby at the time of the assessment. (Exhibit 3F). The claimant reported a relapse of substance abuse in March 2008 (Exhibit 9F-16). At an April 2008 mental health assessment the claimant exhibited flat effect. Attention, concentration and memory were intact. (Exhibit 8F). She was hospitalized on May 29, 2008 after intentional ingestion and polysubstance overdose. She reported prior to the relapse she had been functioning fairly well, not feeling hopeless, and not having suicidal thoughts until she began using again. It was determined she did not meet the criteria for inpatient psychiatric treatment. She was discharged on June 1, 2008. (Exhibit 16F-2-9). In October the claimant reported a binge drinking episode (Exhibit 17F-5). The claimant has undergone mental health treatment. She reports significant improvement in anxiety symptoms with "mindful" breathing and exercising (Exhibit 17F-4).

(AR at 16-17.)

The ALJ's decision shows that she thoroughly reviewed Dr. Jordhen's treatment records. Although the ALJ did not mention Dr. Jordhen by name, the ALJ addressed the symptoms plaintiff was reporting and the causes of those symptoms, which constituted the core of Dr. Jordhen's reports and diagnoses. Plaintiff correctly argues that the opinion of a treating physician is given special deference, *Lester*, 81 F.3d at 832-33, however, Dr. Jordhen did not express any opinions regarding plaintiff's functional limitations. The ALJ is not required to discuss all evidence presented to her. *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981)). The ALJ need only explain why "significant probative evidence has been rejected." *Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981). Plaintiff does not identify any significant probative evidence that was rejected. Plaintiff argues that the ALJ erred by not mentioning the fact that Dr. Jordhen diagnosed many impairments and prescribed medications. However, the mere diagnosis of a disability or a prescription for medication is insufficient to demonstrate disability. *See*

01 *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  While a prescription may indicate the

02 presence of an impairment, it says little about the impact, if any, the impairment may have on

03 plaintiff's ability to work.  The ALJ properly considered Dr. Jordhen's opinion, even though

04 she did not mention her by name.

### 2.  Ashok Modha, M.D.

06     On March 27, 2009, Ashok Modha, M.D., evaluated plaintiff for a possible brain lesion

07 that was incidentally noted on a magnetic resonance imaging ("MRI") during an evaluation for

08 abnormal thyroid tests.  (AR at 490.)  Dr. Modha reported that plaintiff was "awake, alert,

09 oriented and appropriate."  (AR at 493.)  He noted she was somewhat obese, but

10 well-groomed and in no apparent distress.  *Id*.  Her cranial nerves were within normal limits,

11 she had no pronator drift, or dysmetria, and had a negative Romberg test.  *Id*.  She could walk

12 heel-to-toe, and her neck range of motion was normal.  *Id*.  Dr. Modha reported plaintiff had

13 "excellent strength in her upper and lower extremities, with symmetrical reflexes, and no

14 pathological responses, such as Babinski or Hoffman's signs."  *Id*.  He also reported plaintiff

15 did not have a Tinel's or Phalnes' sign at the carpal or cubital tunnel.  *Id*.  Her gait was normal

16 and she could walk on her heels and toes.  *Id*.

17     On April 29, 2009, Dr. Modha reviewed plaintiff's MRI scan of the brain with a number

18 of other neurologists and neurosurgeons.  (AR at 486.)  They concluded that plaintiff's brain

19 lesion was actually a benign pineal cyst, and ordered a follow-up MRI scan in six months.  *Id*.

20 Six months later, another MRI scan showed no changes or complications.  (AR at 588.)  Dr.

21 Modha recommended another follow-up MRI scan in one year.  *Id*.

22     Contrary to plaintiff's claim, the ALJ did not err when she failed to mention Dr.

01  Modha's medical evidence in her decision.  An ALJ need not discuss evidence that is not

02  significant or probative.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.

03  2003); *Vincent*, 739 F.3d at 1394-95.  As the Commissioner points out, plaintiff's cyst was

04  benign and caused no functional limitations and, therefore, was not significant, probative

05  evidence that the ALJ was required to discuss.

06      The Court also rejects plaintiff's argument that the ALJ's failure to discuss Dr. Modha's

07  diagnosis of a small synovial cyst at the L3-4 of her lumbar spine was reversible error.   The

08  ALJ was not required to expressly accept or reject Dr. Modha's notation that plaintiff had "a

09  small synovial cyst at L3-4 on the right side, which *may* be contributing to some of her

10  problems" (AR at 494), because the notation was not a finding that the synovial cyst was

11  actually causing any symptoms or limitations.  Instead, Dr. Modha encouraged plaintiff to

12  follow-up with her physiatrist, Edward Kim, M.D., "to try to sort out the etiology of the pain at

13  this point."   (AR at 494.)   The ALJ did not err in failing to discuss Dr. Modha's

14  recommendation that plaintiff explore with Dr. Kim the possibility of whether the synovial cyst

15  was contributing to any of her problems.

16          3.  Kaarsten Furman, MSW, LCSW

17      Plaintiff also argues that the ALJ failed to properly evaluate the opinions of Kaarsten

18  Furman, MSW, LCSW.  (AR at 371-83, 467-85.)   Under the regulations, social workers are

19  considered "other sources," not "acceptable medical sources."   20 C.F.R. § 404.1513; SSR

20  06-03p.  Accordingly, the ALJ could reject Ms. Furman's opinions by providing germane

21  reasons.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993).

22      Although the ALJ did not mention Ms. Furman by name, the ALJ noted that during her

April 2008 mental health assessment, plaintiff exhibited "flat affect," but that her "[a]ttention, concentration, and memory were intact" on mental status examination. (AR 17, 371-83.) In addition, the ALJ noted that in October 2008, plaintiff reported that she had another binge drinking episode and took all of her son's Ritalin. (AR at 17, 471.) However, plaintiff underwent mental health treatment and reported "significant improvement in anxiety symptoms with 'mindful' breathing and exercising." (AR at 17, 470.)

Plaintiff asserts that the ALJ failed to mention that "in both April and September 2008, Ms. Furman opined that Strong was significantly impaired by her depression, and rated her GAF [Global Assessment of Functioning] at 49 and 50."[2] (Dkt. No. 12 at 9; AR at 374, 379, 478.) Plaintiff contends the ALJ "has a duty not to reject without explanation 'significant probative evidence' such as Ms. Furman's opinion." (Dkt. No. 12 at 10.)

The undersigned agrees with plaintiff that it appears the ALJ rejected Ms. Furman's GAF scores without explanation. As noted above, a GAF score of 41-50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. The only mental limitations the ALJ adopted were a restriction to simple, routine tasks with occasional contact with coworkers and the public. (AR at 15.) A GAF score of 49 or 50, however, may indicate more severe limitations than those found by the ALJ. As such, the undersigned finds Ms. Furman's GAF scores constitute significant probative evidence the ALJ should have considered. On remand, the ALJ should reconsider Ms. Furman's opinions.

---

2 The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000). A GAF score of 41-50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. *Id.* at 34.

B.  Credibility

Plaintiff argues that the ALJ erred in finding her testimony not credible.  (Dkt. No. 12 at 10-15.)  According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722.  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Id*.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Id*.

In this case, there was no evidence that plaintiff was malingering.  Consequently, the ALJ was required to provide clear and convincing reasons to reject her testimony.  As stated by the ALJ, plaintiff testified that "she is always in pain.  Sitting, standing, or lying down makes

01 her back worse.  Her back worsened after a sledding accident in December 2008.  She has

02 shooting pain down the legs.  She is prescribed Morphine and Percocet.  Her pain is a '7' on a

03 scale of 0 to 10."  (AR at 16.)  Plaintiff also testified that her "medications make her tired and

04 weak.  She cannot concentrate and is easily confused.  She has mood swings.  She naps

05 during the day.  Her mom takes care of her children, ages 9 and 2."  *Id*.  She stated that she

06 does not have a social life because she gets "panicky and scared" when she leaves the house.

07 (AR at 16, 34, 40.)  Plaintiff testified she last used illegal drugs in about 2005.  (AR at 16, 36.)

08 First, the ALJ found plaintiff's allegations of disabling back pain were inconsistent with

09 the treatment record.  (AR at 16.)  For example, the ALJ noted that in September 2008

10 plaintiff presented to Dr. Jordhen with complaints of back pain.  (AR at 16, 555.)  However,

11 after a few weeks of physical therapy, she reported that she was "feeling really good" and

12 "having no pain."  (AR at 16, 550.)  In December 2008, she reported low back pain again after

13 sledding downhill and tumbling from the sled.  (AR at 16, 546-47.)  Her doctor recommended

14 restarting physical therapy and being as active as possible with pain tolerance.  *Id*.  By April

15 2009, plaintiff reported improvement in her pain and a decreased need for pain medication with

16 water exercises.  (AR at 17, 523.)  In August 2009, plaintiff reported that she was feeling

17 better, being more active, going to the gym frequently, swimming, and biking.  (AR at 17,

18 496.)  She requested to taper off morphine.  (AR at 17, 496, 592-93.)

19 Substantial evidence supports the ALJ's finding that plaintiff's allegations of disabling

20 back pain were inconsistent with the treatment record.  Inconsistencies such as these can be

21 properly used by the ALJ to find a claimant not credible.  *Carmickle*, 533 F.3d at 1161

22 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's

01 subjective testimony"). Plaintiff argues that the ALJ failed to acknowledge that at the time of

02 the hearing she had not yet fully tapered off of morphine. However, the ALJ did not discredit

03 plaintiff's testimony because she had tapered off of morphine. Rather, the ALJ found Dr.

04 Jordhen's treatment records showed that plaintiff's back pain was not as severe as she alleged

05 as evidenced by plaintiff's own admissions that she was feeling better, being more active, going

06 to the gym frequently, swimming, biking, and requesting increasingly weaker pain medication.

07 (AR at 17, 496, 504, 592-93.) Such contradictions were sufficient for the ALJ to question and

08 to discredit her allegations of disabling pain.

09      The ALJ also found that plaintiff's complaints of pain, depression, and anxiety were

10 inconsistent with her ability to lead an active lifestyle. (AR at 17.) The ALJ noted that in July

11 2008, the plaintiff reported going camping out of town. (AR at 17, 561.) In August 2009, she

12 reported going to the gym frequently, swimming, and biking. (AR at 17, 496.) Activities

13 have a bearing on a claimant's credibility if the level of activity is inconsistent with the

14 claimant's alleged limitations. *See Reddick*, 157 F.3d at 722. The ALJ's conclusion that

15 plaintiff's activities were inconsistent with plaintiff's allegations of debilitating pain and

16 inability to leave home without panic symptoms is a reasonable interpretation of the evidence

17 and is supported by substantial evidence in the record. The ALJ did not err.

18      The ALJ next noted that at a February 2008 psychological evaluation, plaintiff

19 exhibited intact thought processes, normal speech, intact memory, and intact attention and

20 concentration. (AR at 17, 337-43.) In April 2008, her attention, concentration, and memory

21 were also intact. (AR at 17, 371-83.) Although plaintiff was hospitalized in May 2008 for a

22 suicide attempt after relapsing on methamphetamines, cocaine, and alcohol, the ALJ pointed

out that plaintiff subsequently underwent mental health treatment and reported significant improvement in her anxiety symptoms with mindful breathing and exercise.  (AR at 17, 470.) Her mental status examination was unremarkable.  *Id*.  These inconsistencies constitute clear and convincing reasons to challenge plaintiff's testimony regarding her mental limitations.

Next, the ALJ found plaintiff's credibility was undermined by inconsistencies in her reports of drug use.  (AR at 17.)  The ALJ pointed out that plaintiff testified at the hearing that she had not used illegal drugs since approximately 2005.  (AR at 28-29, 36.)  However, the medical records show that plaintiff relapsed in March 2008 (AR at 399) and tested positive for methamphetamines and cocaine in May 2008 (AR at 449).  Plaintiff acknowledges that she reported inaccurate information about her drug use, but argues that this is not a convincing reason to reject all of her testimony about her symptoms and limitations.  (Dkt. No. 12 at 12.) However, inconsistent statements regarding drug or alcohol use may be considered as a reason to reject a claimant's testimony.  *See Thomas*, 278 F.3d at 959 (finding the ALJ permissibly inferred from plaintiff's conflicting information about her drug and alcohol use that "this lack of candor carries over to her description of physical pain.") (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (relying on inconsistent statements about alcohol use to reject plaintiff's testimony)).  The ALJ did not err in considering plaintiff's inconsistent statements regarding drug use.

Plaintiff also challenges the ALJ's statement that she "repeatedly told her treating physician that she ha[d] not used drugs since 2005."  (AR at 513, 521, 525, 530, 537.) Plaintiff asserts that Dr. Jordhen's medical records contain a standard entry that she had not updated, and that Dr. Jordhen was aware of her relapses.  (AR at 557.)  Notwithstanding

01 plaintiff's argument, the ALJ properly found plaintiff's inconsistent statements about her drug

02 use made at the administrative hearing rendered her testimony not credible.

03     The foregoing reasons offered by the ALJ to justify her adverse credibility

04 determination are clear and convincing and supported by substantial evidence in the record.

05 Any error the ALJ may have committed in assuming plaintiff made inconsistent statements

06 about her drug use to Dr. Jordhen was harmless and does not negate the validity of the ALJ's

07 conclusion that plaintiff's testimony was not credible. The ALJ did not err, and her credibility

08 determination must be affirmed.[3]

09     C.  Lay Witness Testimony

10     Plaintiff argues that the ALJ erred in evaluating the lay witness evidence of her mother,

11 Charlene VanBuskirk. (Dkt. No. 12 at 15.) In order to determine whether a claimant is

12 disabled, an ALJ may consider lay-witness sources, such as testimony by spouses, parents,

13 siblings, and friends. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Lay witness testimony as to

14 a claimant's symptoms or how an impairment affects ability to work is competent evidence that

15 cannot be disregarded without comment. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4);

16 *Dodrill*, 12 F.3d at 919. To discount lay witness testimony, the ALJ must "provide reasons

17 germane to each witness." *Id*.

18     On September 18, 2007, Ms. VanBuskirk completed a third-party function report. (AR

19 _____

20     3 The Commissioner also points out that the ALJ noted plaintiff had a history of jail time for identity theft and possession of methamphetamine. (AR at 16.) The Commissioner

21 contends that plaintiff's conviction was a legitimate reason to discount her credibility. However, it appears the ALJ was merely summarizing plaintiff's testimony and did not

22 discount her credibility on this basis. Accordingly, the Court does not consider the Commissioner's claim.

at 153-62.)  She reported that plaintiff could not do any housework or yard work, was easily confused, and had difficulty concentrating.  (AR at 156-57.)  She stated that plaintiff could not function alone, and that she took her to the grocery store and doctor appointments.  (AR at 157-58.)  She indicated that plaintiff had difficulty lifting, bending, standing, reaching, walking, sitting, and climbing stairs.  (AR at 159.)  She said that plaintiff could not lift more than ten pounds, stand more than ten minutes, or walk more than two blocks without pain.  *Id.*

The ALJ found Ms. VanBuskirk's allegations were not credible in light of plaintiff's daily activities and the treatment record.  (AR at 18.)  The ALJ found that the exertional limits she described were inconsistent with evidence that plaintiff went sledding, goes to the gym frequently, swims, and bikes.  (AR at 18, 496, 546.)  In addition, the ALJ noted that plaintiff exhibited intact attention, concentration and memory on mental status examinations.  (AR at 18, 379-80.)

The ALJ gave germane reasons for discounting Ms. VanBuskirk's 2007 report.  Contrary to plaintiff's allegations, Ms. VanBuskirk's claim that plaintiff was severely limited because of back pain was inconsistent with subsequent evidence that plaintiff felt well enough to go sledding in 2008, and go to the gym frequently, swim, and bike in 2009.  (AR at 18, 496, 546.)  Further, the ALJ properly found Ms. VanBuskirk's claim that plaintiff had difficulty with concentration and memory was inconsistent with a subsequent mental status examination which showed plaintiff's attention, concentration, and memory were intact.  (AR at 18, 379-80.)  An ALJ may properly reject lay witness evidence that conflicts with other evidence in the record.  *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2002) (identifying inconsistencies between such statements and the record when looked at as a whole is sufficient).  The

01  discrepancy between Ms. VanBuskirk's testimony and plaintiff's activities and the results of

02  the mental status examination are germane reasons for rejecting her testimony, and that finding

03  is supported by substantial evidence.   The ALJ did not err.

04         D.  Residual Functional Capacity

05         At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

06  assess her work-related abilities on a function-by-function basis, including a required narrative

07  discussion.   20 C.F.R. §§ 404.1545, 416.945.   RFC is the most a claimant can do considering

08  his or her limitations or restrictions.   SSR 96-8p.   The ALJ must consider the limiting effects

09  of all plaintiff's impairments, including those that are not severe, in determining RFC.   20

10  C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p.

11         Plaintiff disputes the ALJ's determination that she retains the residual functional

12  capacity to perform medium work, except she is limited to simple, routine tasks with occasional

13  contact with coworkers and the public.   (AR at 15.)   Plaintiff maintains this determination is

14  inconsistent with her testimony, including her asserted inability to stand or sit for too long due

15  to back pain, her need to change positions, her need to lie down to relieve back pain, her

16  inability to concentrate due to medication side effects and her ADHD, and her difficulty leaving

17  the house.   (Dkt. No. 12 at 16.)   However, as discussed above, the ALJ did not err in

18  discounting her credibility, therefore, she was not required to adopt any of these additional

19  alleged limitations.

20         Plaintiff also argues the ALJ erred by failing to include in her RFC assessment all of the

21  marked and moderate functional limitations described by the State agency psychologists,

22  Thomas Clifford, Ph.D., and Mary Gentile, Ph.D., in the mental residual functional capacity

01 assessment ("MRFC"). (AR at 367-69, 406.)

02      On March 14, 2008, Dr. Clifford completed a MRFC assessment of the plaintiff. (AR

03 at 367-69.) In Section I, titled "Summary Conclusions," Dr. Clifford indicated plaintiff was

04 "markedly limited" in her ability to interact appropriately with the general public. (AR at

05 368.) He also assessed several moderate limitations. (AR at 367-68.)

06      In Section III, titled "Functional Capacity Assessment," Dr. Clifford opined that

07 plaintiff retained the capacity for simple repetitive tasks. (AR at 369.) He also opined that

08 plaintiff was capable of interacting appropriately with supervisors and a few coworkers, but not

09 with the general public. *Id*. He found plaintiff was capable of reacting appropriately to

10 changes in the workplace, dealing with daily hazards, and traveling. *Id*. Dr. Gentile reviewed

11 the medical evidence and adopted Dr. Clifford's MRFC assessment on May 13, 2008. (AR at

12 406.) The ALJ gave the State agency assessments significant weight, however, in light of

13 plaintiff's improved anxiety symptoms and her ability to engage in community activities, the

14 ALJ found plaintiff was capable of occasional contact with the public. (AR at 18.)

15      Plaintiff argues that although the ALJ adopted Dr. Clifford's assessment, she failed to

16 include in the RFC assessment all of the marked and moderate limitations described by Dr.

17 Lysak in Section I of the MRFC. However, as explained in the agency's Program Operations

18 Manual, an ALJ properly focuses on the "narrative" portion of the MRFC form, rather than the

19 "Summary Conclusions" portion. *See* Program Operations Manual System ("POMS") DI

20 25020.101(B)(1). The POMS provides,

21      The purpose of section I ("Summary Conclusion") on the SSA-4734-F4-SUP is
     chiefly to have a worksheet to ensure that the psychiatrist or psychologist has
22      considered each of these pertinent mental activities and the claimant's or

beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis.  **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-SUP **that adjudicators are to use as the assessment of RFC**.  Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.  This must be done carefully using the adjudicator's informed professional judgment.

*Id.*  It is clear that the ALJ acted in accordance with the agency's established procedures when she relied on the narrative portion of Dr. Clifford's opinion set forth in the Functional Capacity Assessment rather than on the limitations recorded in the Summary Conclusions section.  Accordingly, the ALJ properly evaluated Dr. Clifford's opinion.

However, as discussed above, the ALJ erred in her assessment of Ms. Furman's opinions requiring remand.  Accordingly, on remand, after properly evaluating the medical evidence, the ALJ will reevaluate plaintiff's RFC.

E.  Step Four

At step four, the claimant bears the burden of proving that she can no longer perform her past relevant work.   20 C.F.R. §§ 404.1512(a), 404.1520(f).  Although the burden of proof lies with the claimant at step four, the ALJ retains a duty to make factual findings to support her conclusion.  *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (citing SSR 82-61).[4]  The claimant must be able to perform:

1.  The actual functional demands and job duties of a particular past relevant job; or

2.  The functional demands and job duties of the occupation as generally

---

4 "Social Security Rulings . . . are binding on all components of the Social Security Administration."   20 C.F.R. §§ 402.35(b)(1) and (2).

01 required by employers throughout the national economy.

02 SSR 82-61. "This requires specific findings as to the claimant's residual functional capacity,

03 the physical and mental demands of the past relevant work, and the relation of the residual

04 functional capacity to the past work." *Pinto,* 249 F.3d at 845 (citing SSR 82-62). A claimant

05 may be found not disabled at step four based on a determination that she can perform past

06 relevant work as it was actually performed or as it is generally performed in the national

07 economy. SSR 82-61; SSR 82-62.

08 In the present case, the ALJ found that plaintiff could perform her past relevant work as

09 an order clerk as actually performed:

10 The claimant's past work as an order clerk is light exertion, semi-skilled work.
The vocational expert testified this work does not require the performance of tasks
11 precluded by the claimant's residual functional capacity. In comparing the
claimant's residual functional capacity with the physical and mental demands of
12 this work, the undersigned finds that the claimant is able to perform it as actually
performed.

13

14 (AR at 18.)

15 Plaintiff contends that the ALJ erred in finding she could return to her past relevant

16 work as an order clerk because the Dictionary of Occupational Titles ("DOT") indicates that

17 job, as generally performed in the national economy, requires a general educational

18 development ("GED") reasoning level three, which is above that required for simple, routine

19 tasks. (Dkt. No. 12 at 18.) The Commissioner contends that because the ALJ found plaintiff

20 could perform her past work as an order clerk as *actually* performed, not as *generally*

21 performed, information contained in the DOT was not relevant to this finding. (Dkt. No. 15 at

22 15-18.) In reply, plaintiff concedes that under SSR 82-62, the claimant, not the DOT, is the

01  primary source for how the job was actually performed.  (Dkt. No. 18 at 11-12.)  However,

02  plaintiff contends that the ALJ failed to make factual findings to support her conclusion as to

03  the physical and mental demands of her past job as an order clerk as required by SSR 82-62.

04  *Id*.  The Court agrees with plaintiff.

05       As indicated above, SSR 82-62 requires the ALJ to make specific findings of fact as to

06  the physical and mental demands of the claimant's past relevant work.  *Pinto*, 249 F.3d at 845.

07  To make such findings, the ALJ must obtain adequate "factual information about those work

08  demands  which  have  a  bearing  on  the  medically  established  limitations."  SSR  82-62.

09  "Detailed information about strength, endurance, manipulative ability, mental demands and

10  other job requirements must be obtained as appropriate."  *Id*.

11       Here, the ALJ did not obtain any information about the physical and mental demands of

12  plaintiff's past work as an order clerk.  At the hearing, the ALJ merely questioned the

13  vocational expert as to whether plaintiff could return to her past work if she was limited to

14  medium work, simple repetitive tasks, and occasional contact with coworkers and the public.

15  (AR at 46-48.)  The ALJ did not question plaintiff about her past relevant work.  Although

16  plaintiff provided a brief written description of her job as an order clerk in a work history report

17  submitted to the agency, the report did not include detailed information about the physical and

18  mental demands of the job.  (AR at 163-65.)  Having failed to sufficiently develop the record

19  at the hearing, the ALJ was not able to fulfill her fact finding responsibilities.

20       The Commissioner argues that if plaintiff believed the information she provided about

21  her past work was insufficient, her attorney should have questioned her about her past work at

22  the hearing.  The Commissioner argues that because her attorney did not question her about

her past work at the hearing, petitioner is precluded from raising this argument under the invited error doctrine. (Dkt. No. 15 at 16-17.) The Court finds the Commissioner's argument unavailing. The invited error doctrine provides that "'one may not complain on review of errors below for which he is responsible . . . .'" *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002). Here, however, the error was that of the ALJ, not the plaintiff. "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his decision." *Pinto*, 249 F.3d at 844 (citing SSR 82-62). In light of the ALJ's failure to make specific findings as to the physical and mental demands of plaintiff's past relevant work, this matter must be reversed and remanded for further development of the record as to step four, and if necessary, step five.[5]

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings not inconsistent with this Report and Recommendation.

DATED this 1st day of March, 2012.

Mary Alice Theiler
United States Magistrate Judge

---

5 The ALJ also made an alternate step five finding that plaintiff retained the RFC to perform the jobs of addresser, table worker, and dial marker. (AR at 19.) Plaintiff argues that the presence of significant nonexertional impairments required the ALJ to utilize a vocational expert rather than relying on the Medical-Vocational Guidelines. (Dkt. No. 12 at 19.) Plaintiff points out that the ALJ failed to take any testimony from the vocational expert which showed that there were other jobs plaintiff could perform. The Commissioner concedes that the ALJ erred at step five. (Dkt. No. 15 at 17.)